UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

JASON L. SANDERS,

        Plaintiff,                        Case No. 1:21-cv-1091

v.                                          Honorable Jane M. Beckering

HEIDI E. WASHINGTON et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint because it is malicious and frivolous. The Court will further deny Plaintiff's pending motion for leave to supplement the complaint.

**Discussion**

**I.**      **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi E.

Washington and the following IBC personnel: Warden Matt Macauley; Deputy Warden Unknown Walzaeff[1]; Healthcare Supervisor Unknown Parties #1; Healthcare Unit Manager Unknown Parties #2; Nurse Unknown Buckley; Assistant Deputy Warden of Housing Unknown Parties #3; First and Second Shift Commanders Unknown Parties #4; and Sergeant Unknown Wagner. Plaintiff also sues the following IBC personnel but does not provide their position or title: Unknown Battle, Unknown Stroll, Unknown Lane, Unknown Zuki, and Unknown Robinson.

At first glance, Plaintiff's complaint resembles dozens of others that have been brought in the Western District of Michigan by prisoners with legitimate fears posed by the ongoing COVID-19 pandemic and frustrations with their prisons' responses. Yet, on closer inspection, Plaintiff's complaint resembles several others that *he* has previously brought in this Court against many of the same defendants.

In the instant complaint, Plaintiff alleges a sprawling series of conduct spanning approximately a year, from March 2020 to March 2021. (*See* Compl., ECF No. 1, PageID.13.)

Plaintiff alleges that in March 2020, Governor Gretchen Whitmer declared a state of emergency and imposed multiple measures for the public and in Michigan prisons to limit the spread of COVID-19 in the State, but IBC staff failed to comply. (*Id.*, PageID.2–3.) Later, IBC staff failed to adhere to masking orders. (*Id.*, PageID.5.) They also came to work while positive with COVID-19, and Defendants did not require that IBC staff to test before entering the facility. (*Id.*, PageID.3.)

On May 18, 2020, the National Guard and IBC staff tested prisoners for COVID-19 without taking adequate measures to limit transmission. (*Id.*, PageID.3.)

---

[1] On several occasions, Plaintiff refers to a senior prison official by the name of "Walzack." The Court presumes that Plaintiff intends to refer to the same individual.

On multiple occasions from March to August 2020, unidentified Defendants summoned Plaintiff and other prisoners to the control tower or to healthcare services where social distancing was neither maintained nor possible. (*Id.*, PageID.4, 5.)

On August 26, 2020, test results returned, which presumably found that several IBC prisoners had tested positive for COVID-19. (*Id.*, PageID.5.) Defendants Washington and Macauley stopped all transfers out of IBC. (*Id.*) From August 26 to August 29, 2020, Defendants Macauley, Klein, and Walzaeff permitted prisoners to eat and work in the dining hall without social distancing. (*Id.*, PageID.6.)

Plaintiff alleges that at some point during the year-long span, he was issued a false misconduct and placed in segregation. (*Id.*) After serving his sanction, he was directed to return to his cell. Plaintiff refused to comply with the order because he purportedly believed that it would place his health at risk. Defendant Wagner reported Plaintiff for misconduct, presumably because Plaintiff failed to comply with a direct order. Plaintiff alleges that this was unlawful. (*Id.*)

Starting in late January or early February, IBC experienced a second wave of COVID-19 infections with the B.1.1.7 variant. Plaintiff contends that kitchen workers from several units became ill because Defendants did not fumigate or sanitize the dining hall and other areas. (*Id.*, PageID.7.) Plaintiff further complains that Defendants did not adequately clean the ventilation system or windows. (*Id.*, PageID.7–8.)

Prisoners who worked as porters, including Plaintiff's cellmate, "were denied any protective gear" while they cleaned. (*Id.*, PageID.4.) They also purportedly were not provided bleach cleaning solution or sanitizer. (*Id.*, PageID.10.)

On February 14, 2021, Plaintiff moved into a cell with a food service worker who at some point tested positive for COVID-19. (*Id.*, PageID.8.) On February 20, 2021, Plaintiff

3

moved again into a cell with another prisoner who at some point tested positive for COVID-19. (*Id.*, PageID.9.)  Plaintiff tested positive for COVID-19 several days later.

While Plaintiff and his unit locked down due to the outbreak, he alleges that medical staff did not round on his unit, grievances were not collected, and Defendants Stroll and Battle did not distribute or collect legal mail.  (*Id.*)  Plaintiff further avers that no custody or administrative staff came to the unit to speak with prisoners.  (*Id.*)  He alleges that he was hospitalized due to COVID-19, but he was only ever provided ibuprofen by IBC healthcare staff.  (*Id.*, PageID.10–11.)  Plaintiff purportedly was never called out by healthcare services for COVID-19 issues.  (*Id.*, PageID.11.)

Plaintiff contends that Defendants Washington and Macauley failed to provide Plaintiff an environment where he could avoid contracting COVID-19.  (*Id.*)  He further asserts that Defendants Washington and Macauley refused to decrease the population at IBC.  (*Id.*)

At some point, Plaintiff alleges that his legal property was vandalized purportedly because he complained about cold showers.[2]  (*Id.*, PageID.12.)

Notably, Plaintiff also alleges that he has been unlawfully confined to IBC since December 23, 2020, (*id.*, PageID.2) and that he is serving a sentence for conviction of a misdemeanor (*id.*, PageID.12).

Plaintiff also lists five jumbled claims that each assert multiple constitutional arguments ostensibly supported by the above factual allegations.  (*Id.*, PageID.13–17.)

Plaintiff seeks declaratory relief, $100 million in compensatory damages, $250 million in punitive damages, and costs.

---

[2] In another complaint describing this event, Plaintiff explains that his materials were dumped into a pile in the middle of his cell, leaving them disorganized.

## II.     Malice and Frivolity

Because the instant complaint repeats many factual allegations and claims that Plaintiff has previously raised in the federal courts, the Court must determine whether the complaint is frivolous or malicious.

### A.     Standard

Plaintiffs generally have "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendants." *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977).  Accordingly, as part of its inherent power to administer its docket, a district court may dismiss a suit that is duplicative of another federal court suit. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Adams v. California Dep't of Health Serv.*, 487 F.3d 684, 688 (9th Cir. 2007); *Missouri v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 953–54 (8th Cir. 2001); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138–39 (2d Cir. 2000); *Smith v. SEC*, 129 F.3d 356, 361 (6th Cir. 1997).  The power to dismiss a duplicative lawsuit is meant to foster judicial economy and the "comprehensive disposition of litigation," *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952), and to protect parties from "the vexation of concurrent litigation over the same subject matter." *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991).

Moreover, prisoners who bring civil actions *in forma pauperis* face additional constraints due to statutory barriers when bringing duplicative claims. *See, e.g.*, *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) (per curiam) ("[T]he court's power of dismissal in IFP cases under section 1915(d)[3] is broader than in other civil cases under the Federal Rules of Civil Procedure.").  The PLRA commands that district courts "shall review . . . as soon as practicable . . .

---

[3] Prior to April 26, 1996, the provisions in § 1915(e)(2) were set forth at 28 U.S.C. § 1915(d).

5

a complaint in which a prisoner seeks redress from a governmental entity or officer" and dismiss it if it "is frivolous, malicious, or fails to state a claim . . . ." 28 U.S.C. § 1915A.

The Sixth Circuit has not provided clear guidance as to the meaning of "malicious" in § 1915A(b)(1) or its analogues in § 1915(e)(2)(B) and 42 U.S.C. § 1997e(c)(2).[4] However, the Eleventh Circuit recently joined all other circuits that have confronted the question to conclude that a "duplicative complaint is an abuse of the judicial process and is properly dismissed without prejudice as malicious" for prisoners suing governmental entities and those proceeding *in forma pauperis*. *Daker v. Ward*, 999 F.3d 1300, 1308 (11th Cir. 2021); *accord Day v. Toner*, 530 F. App'x 118, 121 (3d Cir. 2013) ("[A] complaint is malicious where it is abusive of the judicial process and merely repeats pending or previously litigated claims . . . ."); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) ("[R]epetitious litigation of virtually identical causes of action may be dismissed under 28 U.S.C. § 1915(d) as malicious.") (alteration in original)); *Aziz v. Burrows*, 976 F.2d 1158, 1158–59 (8th Cir. 1992) (confirming rule under former § 1915(d) that a district court may dismiss duplicative complaints as malicious); *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995) (noting that dismissal without prejudice of an action under 28 U.S.C. § 1915 when the complaint "merely repeats pending or previously litigated claims," serves Congress' goal of limiting plaintiffs from filing "frivolous, malicious, or repetitive lawsuits" (citations omitted)); *McWilliams v. Colorado*, 121 F.3d 573, 574 (10th Cir. 1997) ("[R]epetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious.") (quotation marks omitted, first alteration in original)); *Crisafi v. Holland*, 655 F.2d

---

[4] 28 U.S.C. § 1915A requires a court to screen prisoners complaints seeking redress from a governmental entity or officer. Section 1915(e) requires that a court dismiss an action, in whole or in part if it is malicious, where a plaintiff is proceeding *in forma pauperis*. In a related statute, 42 U.S.C. § 1997e(c) requires that a court dismiss an action, in whole or in part if it is malicious, where a prisoner challenges prison conditions under federal law. Frequently, a prisoner who brings a civil rights case is subject to all three.

1305, 1309 (D.C. Cir. 1981) (explaining that a complaint brought by a pauper "that merely repeats pending or previously litigated claims" is abusive and "[a] complaint plainly abusive of the judicial process is properly typed malicious"); *see also Hurst v. Counselman*, 436 F. App'x 58, 60–61 (3d Cir. 2011) (concluding that the plaintiff's duplicative action evinced an attempt to vex, injure or harass a defendant and was therefore properly dismissed as malicious); *Davis v. Bacon*, 234 F. App'x 872, 874 (10th Cir. 2007) (affirming dismissal of a complaint as frivolous and malicious because it "substantially mirror[ed] the prior complaint"); *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993) (concluding "it is 'malicious' for a pauper to file a lawsuit that duplicates allegations of another pending federal lawsuit" filed by the same plaintiff); *Van Meter v. Morgan*, 518 F.2d 366, 367 (8th Cir. 1975) (affirming the dismissal of a complaint as frivolous where the plaintiff proceeding with pauper status already had filed similar complaints, one of which was currently pending and "deal[t] with issues directly related, if not identical, to these herein").

Therefore, this Court concurs with the uniform practices of the seven circuits that have confronted the issue: a complaint challenging prison conditions under federal law brought by a prisoner proceeding *in forma pauperis* that repeats pending or previously litigated claims is properly dismissed without prejudice as malicious under the PLRA. Yet, several circuits have further indicated that a complaint need only be *substantially* similar to previous or pending claims for a court to dismiss as malicious. *See, e.g.*, *Davis*, 234 F. App'x at 874; *Van Meter*, 518 F.2d at 367. For example, notwithstanding permissive joinder under Rule 20(a)(2) of the Federal Rules of Civil Procedure, the Fifth Circuit permits dismissals for malice where a plaintiff brings a subsequent complaint against new defendants with claims arising out of the transaction or occurrence as an earlier complaint. *See, e.g.*, *Bailey*, 846 F.2d at 1020, 1021 (affirming the district court's dismissal as malicious of an action alleging similar facts as an earlier action but against a

7

new defendant). Clearly, even some partially duplicative complaints may abuse the judicial process, particularly where a court concludes that the plaintiff intends to vex, injure or harass a defendant.

Dismissing as malicious substantially duplicative or similar complaints serves multiple purposes. First, the practice conserves judicial resources. Conservation of judicial resources permits courts to identify and resolve other pending matters with urgency including, for example, legitimate claims brought by prisoners who are in imminent danger. Indeed, Congress created the PLRA to address "the skyrocketing numbers of claims filed by prisoners—many of which are meritless—and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). Dismissals of subsequent but substantially similar complaints as malicious therefore aid judicial economy. *Cf. Kerotest Mfg. Co.*, 342 U.S. at 183.

Second, it limits a vexatious litigant from filing lawsuits with similar factual allegations and claims against the same or overlapping defendants. The PLRA extends a federal court's inherent power to dismiss as frivolous a duplicative complaint, *see e.g.*, *Colo. River Water Conservation Dist.*, 424 U.S. at 817, because it permits a federal court to dismiss as malicious a substantially duplicative complaint, *see Davis*, 234 F. App'x at 874; *Pittman*, 980 F.2d at 995. Substantially duplicative complaints, when filed without good cause, abuse the judicial process and may subject defendants to "the vexation of concurrent litigation over the same subject matter." *Adam*, 950 F.2d at 93.

An example illustrates the point. A prisoner-plaintiff proceeding with pauper status may bring, for example, Claims A, B, and C against a defendant in the first complaint. Suppose that only Claim A survives preliminary screening under 28 U.S.C. § 1915A, and the plaintiff

therefore avoids a strike under 28 U.S.C. § 1915(g). While the first action remains pending, the plaintiff may then file a new action with a complaint alleging Claims A, D, and E against the same defendant; and a third action with a complaint alleging Claims A, F, and G against the original defendant. Notwithstanding differences between the complaints, the presence of Claim A would permit all three actions to proceed beyond the preliminary screening required by the PLRA even if only Claim A survived in each. The original defendant would face three separate actions.

Furthermore, absent the ability to dismiss without prejudice substantially similar complaints as malicious, a prisoner-plaintiff may circumvent the three-strikes provision of 28 U.S.C. § 1915(g). Whether inadvertent or deliberate, a plaintiff could be shielded from receiving strikes by appending any new claims he desires to bring and reasserting a previous claim that alleged facts sufficient to state a claim. Such a result would undermine Congress' objectives with the PLRA "to put in place economic incentives that would prompt prisoners to" proceed prudently. *See Hampton*, 106 F.3d at 1286.

Finally, a dismissal without prejudice of a substantially similar complaint would ensure that the plaintiff does not suffer gratuitous harm. *Cf. Strandlund v. Hawley*, 532 F.3d 741, 745–46 (8th Cir. 2008) (interpreting "gratuitous harm" in the context of remedying misjoinder). The plaintiff would remain able to refile a new complaint after eliminating the duplicative claims.

For all of the foregoing reasons, this Court concludes that partially duplicative complaints aimed at vexing, injuring or harassing defendants, and that therefore abuse the judicial process, should be dismissed without prejudice as malicious pursuant to the PLRA.

**B.    Analysis**

Since September 2020, Plaintiff has become a frequent litigant in this Court. During his first 20 years of incarceration, Plaintiff filed only six civil actions in the Western District of Michigan. It does not appear that Plaintiff has filed any civil actions in the Eastern

District of Michigan. In less than 18 months since September 2020, Plaintiff has filed 7 actions in this Court. The instant action, *Sanders v. Washington*, No. 1:21-cv-1091 (W.D. Mich.) (*Sanders VI*), is Plaintiff's sixth of the seven.[5]

According to *Sanders II*, Plaintiff began filing complaints at an accelerated rate after IBC indefinitely suspended in August 2020 a prison program and thereby delayed Plaintiff's anticipated parole. *See Sanders II*, 2020 WL 6110787, at *2–3. "Plaintiff's earliest release date was September 1, 2009, and his maximum discharge date is June 16, 2025." *Id.* at *2. From 2008 to 2017, Plaintiff accrued approximately 300 misconduct tickets. *Id.* Many of the tickets were for sexual misconduct reporting that Plaintiff verbally harassed or exposed himself to female staff. *Id.* Although Plaintiff went more than two years from 2017 to late 2019 without a misconduct and he was not convicted of any sex offenses, parole board members informed Plaintiff in December 2019 that he would need to complete the Michigan Sex Offender Program (MSOP) before he could gain parole. *Id.* Plaintiff began the MSOP and apparently was not a model participant. *Id.* at *2–3. He was kicked out between April and July 2020. *See id.* By July 30, 2020, he had returned to the MSOP. *See id.* However, the MSOP group leader suspended the program shortly thereafter in late August 2020, presumably because of the COVID-19 pandemic. *Id.* at *3. Plaintiff therefore remained unable to complete the conditions imposed on him to qualify for parole, and he filed his complaint in that action on September 14, 2020.

---

[5] For clarity and brevity, the Court designates these actions as "Sanders" followed by a roman numeral to indicate the order in which they were filed:

*Sanders v. Washington*, No. 1:20-cv-871, 2020 WL 5757387 (W.D. Mich.) (*Sanders I*);
*Sanders v. Washington*, No. 1:20-cv-889, 2020 WL 6110787 (W.D. Mich.) (*Sanders II*);
*Sanders v. Washington*, No. 1:21-cv-54, 2021 WL 1049876 (W.D. Mich.) (*Sanders III*);
*Sanders v. Washington*, No. 1:21-cv-510 (W.D. Mich.) (*Sanders IV*) (action related to and with claims severed from *Franklin v. Washington*, No. 1:21-cv-313 (W.D. Mich.));
*Sanders v. MaCauley*, No. 1:21-cv-746 (W.D. Mich.) (*Sanders V*);
*Sanders v. Washington*, No. 1:21-cv-1091 (W.D. Mich.) (*Sanders VI*);
*Sanders v. Macauley*, No. 1:22-cv-18 (W.D. Mich.) (*Sanders VII*).

Less than a week earlier, on September 8, 2020, Plaintiff filed *Sanders I*, the first of his seven civil actions since September 1, 2020. In his *Sanders I* complaint, Plaintiff alleged a series of conduct at IBC from March to late August 2020, related to facility's response to the COVID-19 pandemic. A review of the court's opinion partially dismissing Plaintiff's *Sanders I* complaint reveals that many of Plaintiff's allegations from *Sanders I* are repeated in his instant complaint. Plaintiff alleged that social distancing was not possible, and IBC staff entered the facility without testing. *Sanders I*, 2020 WL 5757387, at *1. He stated that on May 18, 2020, IBC and National Guard personnel tested prisoners for COVID-19 but failed to take proper safety measures. *Id.* Plaintiff averred that prisoners who worked as porters cleaning IBC were not provided personal protective gear and only received a water-sodium mixture to decontaminate surfaces rather than bleach. *Id.* He asserted that when he went to the control center to pick up legal mail or to healthcare services, the areas were crowded, and prisoners were not socially distanced. *Id.* at *1, 2. He further alleges that a defendant in that action took a photo implying that IBC staff enforced COVID-19 protocols and sent the photo to the warden, MDOC director, and governor. *Id.* at *2. Plaintiff also stated that some IBC personnel refused to wear masks properly. *Id.* On August 26, 2020, several IBC prisoners tested positive for COVID-19. *Id.* Plaintiff alleged that from August 25 to August 28, 2020, "McCauley, Bennickson, and Klein allowed prisoners" to eat in the IBC dining hall in proximity to other prisoners. *Id.*

In *Sanders I*, Plaintiff named, among others, the following defendants: MDOC Director Heidi E. Washington, Warden Matt Macauley, and Deputy Warden Unknown Walzack. *Id.* at *1. All of the above allegations and defendants are repeated in the instant complaint.

Later in *Sanders III*, which Plaintiff filed on January 19, 2021, he alleged that the defendants in that action suspended legal library services in August 2020 after several IBC

11

prisoners tested positive for COVID-19. *Sanders III*, 2021 WL 1049876, at *1. He also stated that he received a false misconduct conviction for possession of tobacco, and that IBC personnel caused him to miss a filing deadline to contest the misconduct in state court. *Id.* at *1–2. In *Sanders III*, Plaintiff named, among others, MDOC Director Heidi E. Washington and Warden Matt Macauley as defendants. All of the *Sanders III* allegations and defendants described above are repeated in the instant complaint.

*Sanders IV* is the product of a case created by severance. In an amended complaint in *Franklin v. Washington*, No. 1:21-cv-313 (W.D. Mich.), Plaintiff joined an ongoing action initiated by another prisoner. The Court severed Plaintiff's claims into a new, related action, *see Franklin*, No. 1:21-cv-313 (W.D. Mich. June 16, 2021) (ECF No. 9, PageID.307–311), which resulted in *Sanders IV*.

The amended complaint in *Sanders IV* raises many allegations like those in the instant complaint, and against an overlapping set of defendants. In his amended complaint, Plaintiff alleged that IBC staff did not undergo mandatory testing for COVID-19 and as a result, staff entered the facility while sick with COVID-19. *Sanders IV* (W.D. Mich. July 7, 2021) (Am. Compl., ECF No. 12, PageID.325, 332). He stated that prison porters cleaned without "proper" personal protective equipment or cleaning supplies. *Id.* (PageID.330.) Plaintiff explained that IBC food services staff did not take proper precautions to limit the risk of COVID-19 transmission in the dining hall and kitchen. *Id.* (PageID.333, 340–341). He asserted, for example, that in late January and early February 2021, the B.1.1.7 variant of the novel coronavirus infected a succession of kitchen workers in Units 7, 6, and 3, and IBC staff did not shut down food services nor did they either fumigate or sanitize the area. *Id.* (PageID.327–328, 333). Plaintiff also argued that the vents and windows at IBC had not been cleaned for several years. *Id.* (PageID.333). Plaintiff claimed

that around February 9, 2021, he was placed in a cell with a food service worker who had COVID-19, he was later moved to a different cell with another prisoner who had COVID-19, and Plaintiff eventually tested positive on February 23, 2021. *Id.* (PageID.328, 330). After Plaintiff tested positive, he was placed in an isolation unit where IBC personnel did not perform medical rounds, did not collect grievances, did not process legal mail, and custody and administrative staff did not round on the unit. *Id.* (PageID.327, 329, 336, 337, 341). He asserted that he received only ibuprofen to mitigate the pain. *Id.* (PageID.331). He further contended that it was virtually impossible for him to socially distance, and he was not provided a place where he could avoid getting sick with COVID-19. *Id.* (PageID.331, 332, 337, 338). Plaintiff also alleged that his legal property was vandalized. *Id.* (PageID.333). In *Sanders IV*, which remains pending, Plaintiff sues MDOC Director Heidi E. Washington, Warden Macauley, Deputy Warden Walzack, the unknown Healthcare Unit Manager, the unknown Healthcare Unit Supervisor, Grievance Coordinator Unknown Robinson, Prisoner Counselor Unknown Stroller,[6] and Unknown Battle. All of the *Sanders IV* allegations and defendants described above are repeated in the instant complaint.

Plaintiff's instant complaint raises the same or virtually the same issues he raised in two earlier actions against an overlapping set of Defendants. In each of these three actions, Plaintiff challenges IBC's efforts to address the risks posed by the ongoing global COVID-19 pandemic.[7] Plaintiff's instant omnibus complaint appears to do nothing more than duplicate claims

---

[6] The Court presumes that Unknown Stroller from *Sanders IV* is the same individual that Plaintiff identifies as Unknown Stroll in the instant complaint.

[7] The Court further notes that the instant complaint, like several that have come before it, arguably contain claims against misjoined defendants. *See Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009) ("[A] civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." (internal quotations omitted)).

13

and allegations that he has previously brought in this Court. For that reason, the Court will dismiss the complaint as frivolous and malicious.

The Court further concludes that Plaintiff intends to vex and harass multiple Defendants, particularly Defendants Washington and Macauley. Although most circuits apply an objective standard when determining malice, at least one circuit has suggested that a court must inquire into the subjective motivations of the Plaintiff "to determine whether the action is an attempt to vex, injure, or harass" any defendant. *See Hurst*, 436 F. App'x at 60. The complaint in this action represents Plaintiff's sixth attempt to sue Defendant Macauley and fifth attempt to sue Defendant Washington since September 1, 2020. None of Plaintiff's claims against Defendants Washington or Macauley in these prior actions have survived preliminary screening. Yet, Plaintiff continues to name both Defendants Washington and Macauley as defendants, including in the instant action. Moreover, the blitz follows the postponement of Plaintiff's anticipated parole, for which he sued both Defendants Washington and Macauley. Thus, to the extent this Court must consider the subjective motivations of the Plaintiff, the facts described above—when taken together with Plaintiff's duplicative allegations and claims—provide a clear inference that Plaintiff intends to vex and harass multiple Defendants.

Substantially or virtually duplicative complaints, like the one filed here, bring multiple harms. They are time-consuming and divert judicial resources away from other pressing matters, including complaints filed by prisoners who face legitimate and original problems with their prison conditions. They also subject defendants to serial and vexatious litigation related to

the same conduct. Thus, for all the foregoing reasons, the Court will dismiss Plaintiff's complaint without prejudice as frivolous and malicious.[8]

### III.   Pending motion

Plaintiff also has a motion pending before the Court for leave to supplement the complaint. (ECF No. 5.) In light of the Court's dismissal of the complaint as frivolous and malicious, and because Plaintiff's new allegations appear to duplicate those he raises in *Sanders VII*, the Court will deny his motion.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed without prejudice as frivolous and malicious, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's complaint is properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   January 27, 2022                         /s/ Jane M. Beckering
                                                  Jane M. Beckering
                                                  United States District Judge

---

[8] Plaintiff is further warned that continued attempts to file duplicative claims may result the Court issuing a motion to show cause why he should not be sanctioned under Rule 11 of the Federal Rules of Civil Procedure.

15